**GRASLEY, Plaintiffs, v. EPPLEY, Defendant.**
**PARR, Plaintiffs, v. EPPLEY et, Defendants.**

Common Pleas Court, Muskingum County.

Nos. 38747, 38750. Decided August 25, 1953.

Ralph G. Marshall, Zanesville, for plaintiffs.

Graham, Graham, Gottlieb & Johnston, Zanesville, for defendant Eppley.

Joseph McNerney, Pros. Atty., Zanesville, for defendant Township Trustees.

## OPINION

By CROSSLAND, J:

These two actions in equity for injunction and damages were heard and tried together, upon the separate issues of each.

No damages were sufficiently shown to have actually resulted to either plaintiffs from the matters complained of in either case, to the time of suit, March 16, 1953, while in fact the gravamen of the claims of the respective parties plaintiffs is that loss and damages are likely to occur if and when they seek to utilize certain portions of their respective properties for agricultural purposes, due to the matters complained of against which injunctions are sought. The question and element of claimed damages is therefore dismissed in each case and the court proceeds only to the further consideration of the issues of injunction.

The general rule governing the granting or refusal of injunctive relief sought is well stated in 28 American Jurisprudence 222, Section 29.

"Courts cannot determine the right of parties in advance of an actual existing controversy concerning them, and the power to grant injunctive relief is never exercised to allay mere apprehension of injury or against something merely feared as liable to occur at some indefinite time in the future. The injury must be real, not imaginary. It must appear to the satisfaction of the court that the apprehension is well grounded, that there is a reasonable probability that a real injury, for which there is no adequate remedy at law, will occur if the injunction is not granted. Where the danger is apparent and real as distinguished from an imaginary fear of injury, injunctive relief may be warranted. The Court ought not to interfere, however, where the injury apprehended is of a character to justify conflicting opinions as to whether it will in fact ever be realized, or where nothing more than a mere opportunity to do wrong is disclosed."

The foregoing statement is referred to, not as indicating any clear direction in the premises of these two cases, but rather as reflecting the factor of uncertainty that frequently confronts a court in attempting to pass upon the merits of a controversy that is somewhat entwined with clashing personalities and a tendency toward recriminations.

The Court believes that both plaintiffs and the principal defendant in each case are genuinely concerned as to their respective legal rights and sincerely convinced of the legal correctness of their opposite positions. Their view and assertion of separate rectitude merely accentuates their differences and intensifies their separate determinations to resist each other's efforts.

This Court says with all frankness that it cannot determine and knows no way now to determine what the natural drainage of these three separately owned properties was in their original undivided and unimproved state, from any evidence presented; that the private and public man-made improvements during generations of previous ownership, as well as recently, from which past and present owners have benefited, effectively precludes any possibility of ascertainment; and that any endeavor to so ascertain would not only be merely academic in the face of all that has been done by these parties and their predecessors to change the original drainage in so many ways to their common and mutual advantages but that it would also prove utterly futile and useless as a projected solution of their actual differences and difficulties.

Accordingly, this Court flatly discards what the parties and their predecessors in title themselves already long ago discarded, as a rule for determining controversial drainage questions between and among them, when they directed water away from their buildings, sought and obtained public roads abutting and through portions of their properties, from which they caused and permitted natural drainage to be diverted, captured and carried water through tile down their fields, and in countless other ways at various times controlled the water falling upon and flowing through their lands so that it would be helpful where they needed and wished it and innocuous where it was detrimental and unwanted.

Nature's own drainage operating upon, over, through and under the original wilderness that pre-existed the three farms in question has been so far affected by the acts and improvements privately and publicly performed during the past 200 years that only God knows what was natural to the forestation and wilderness that preceded the advent of American civilization or even as recently as 100 years ago and this Court has received no special message on the subject in this particular controversy in any respect.

In essence, therefore, what the parties really are seeking and what they are entitled to know as nearly as the Court can tell them from the evidence, instead of natural drainage, is the drainage that is now natural and logical to the physical factors which former and present owners have helped create in their conditions and surroundings, for their own mutual and general benefit, and which is now natural and logical to the artificiality of the changes and improvements made and accepted in their various operations in and upon the land, in and throughout all of which they have simultaneously controlled, directed and diverted falling rain and flowing water. Similar consideration prompted the action of the public officials who extended the township road past the Parr and Eppley properties for the greater convenience of these same parties

and others. These benefits and advantages they all helped create and acquiesced in, including the accompanying artificial diversion of the pre-existing natural water flow.

The Court, therefore, deals with the existing drainage controversy among and between the parties in the same method and regard as they themselves and others before them have treated their own surface and stream water for generations—as an instrumentality of helpfulness and benefit, not to cripple or destroy, of common concern and joint usefulness, neither to be appropriated exclusively by one nor foisted entirely upon another, a neighborhood and community problem and a neighborhood and community solution, without self or selfish determination. That is the only rational principle that makes sense and that is this Court's view of the proper and correct law that this particular situation demands, regardless and independently of the technical niceties of so-called natural drainage, which the parties by their own practices and that of their predecessors in title are in no position to invoke or impose at this late date.

The existence of unnecessary conditions created by defendant Eppley, conducing and conducive to damage to plaintiffs in each case, by "precipitous" superimposed action of the elements, seems to the Court to warrant its action without awaiting the occurrence of actual and devastating damage merely to prove that it can happen, when it is already abundantly evident from past experience with nature that it not only can but will. The natural hazard of agriculture is a sufficiently severe potential at all times without the added risk of man-made obstacles to facilitate or augment nature's fickleness from season to season and year to end.

Briefly, the Grasley ditching was not an excessive "cleaning out" under all the facts and circumstances in evidence, and was done in good faith and within reasonable limitations. Even though it went east to accommodate the Vandenbark pond or lake and drained this water to the west, that was a proper and sensible thing to do and, furthermore, it was all Grasley water before it reached Eppley, who, in turn, is similarly benefited by his westerly release of drainage of his own and Grasley's water. It seems obvious to this Court that Grasley has a legal right to accept and carry water from the Vandenbark property into an already created and existing stream flowing westerly and logical and neighborly to do so and to expect such stream to fulfill its function naturally and uninterruptedly throughout its course west through and beyond the Eppley property, which it is capable of doing successfully and without necessary damage to anyone. If by the time such water reaches Eppley he feels impelled to clean out his portion of the ditch periodically by deepening and widening it somewhat from its present condition so as not to overflow his property he is always privileged to do so, but he may not protect his own farm from possible overflow by rejecting the water artificially upon Grasley either by damming against it or slowing its passage. Defendant Eppley is therefore ordered to remove these two artificial obstructions.

Similarly, said defendant is ordered to remove the culvert he placed upon the south side of the township road and reinstate that portion of the right of way to the condition intended and provided in said road con-

struction under official supervision and direction, required of the defendant trustees in case number 38750, or to pay the township expense thereof, to be taxed as costs against him in said case, and is enjoined from any interference therewith thereafter.

Said defendant is enjoined from opening passages along the North-South fence between his property and that of plaintiffs in each case and to abide by the topography of the ground as it preexisted his such acts and to perform whatever task or defray whatever expense, if any, to be taxed as costs herein against him, as may be required to so reinstate said former condition, which permitted water to follow a course over defendant's property immediately west of said line fence to the aforesaid east-west ditch or stream.

Defendant Eppley to pay costs and entry to be drawn and submitted in accordance with the findings and determinations of this Opinion, with exceptions given said defendant in each case. Bond for appeal fixed at $1,500.00 in each case.